IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES C. SONGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:13–CV–504 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff James C. Songer ("Songer") filed this action challenging the final decision of the

Commissioner of Social Security ("Commissioner") determining that he was not disabled and

therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits

("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

Specifically, Songer alleges that the ALJ should have given greater weight to the opinion of his

treating physician, failed to properly consider his impairments alone and in combination, and

improperly assessed his credibility. I **RECOMMEND DENYING** Songer's Motion for

Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary

Judgment. (Dkt. Nos. 23 & 24).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Songer failed to demonstrate that he was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Songer filed for SSI and DIB on May 19, 2010, claiming that his disability began on November 1, 2009.[2] Administrative Record, hereinafter "R." 256–63. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 176–81, 188–201. On April 3, 2012, ALJ Jeffrey Schueler held a hearing to consider Songer's disability claim. R. 100–29. Songer was represented by an attorney at the hearing, which included testimony from Songer and vocational expert James Williams. Id.

On June 7, 2012, the ALJ entered his decision analyzing Songer's claim under the familiar five-step process,[3] and denying Songer's claim for benefits. R. 87–95. The ALJ found

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Songer's date last insured was December 31, 2014. R. 87. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

that Songer suffered from the severe impairments of coronary artery disease, chronic obstructive pulmonary disease (COPD), sleep apnea and hypertension. R. 89. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 90. The ALJ further found that Songer had the residual functional capacity ("RFC") to perform a reduced range of light work. R. 91. Specifically, the ALJ found that Songer can lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 2 hours in an 8 hour period; sit for 6 hours in an 8 hour period; would need a sit/stand option at 30 minute intervals; should never climb; can occasionally balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to cold, heat and workplace hazards; and should avoid all exposure to pulmonary irritants and chemicals. R. 91.

The ALJ determined that Songer could not return to his past relevant work, but that he could work at jobs that exist in significant numbers in the national economy, such as addresser, table worker and assembler. R. 95. Thus, the ALJ concluded that he was not disabled.

Songer requested that the Appeals Council review the ALJ's decision and submitted to the Appeals Council additional medical evidence, which the Appeals Council made part of the record. R. 1–83. On September 4, 2013, the Appeals Council denied Songer's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Songer alleges that the ALJ erred by failing to give greater weight to the opinions of his treating physician George Wagner, M.D. Songer further alleges that the ALJ erred by failing to consider his impairments alone and in combination and by properly failing to evaluate his credibility. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision on all grounds, and recommend affirming the decision in this case.

**Treating Physician Opinion**

Songer is a long-time smoker with a history of hypertension, gastroesophageal reflux disease and COPD. Songer was 49 years old at the time of the administrative hearing, and has his GED. R. 107, 110. He previously worked as a refrigeration installer and mechanic, customer service manager, construction worker and fast food cook at Burger King. R. 110–11.

Songer underwent a cardiac catheterization and stent placement in June 2008. R. 350–356. On December 11, 2008, Songer visited the Bradley Free Clinic complaining of low back pain, worse with standing and bending. R. 371. A straight-leg raising test was negative, and Songer was prescribed anti-inflammatory medication and exercises. Id. Songer returned to the free clinic in February 2009 for medication refills. R. 372. He was diagnosed with hypertension and hypercholesterolemia and given prescriptions for coronary artery disease, hypertension, high cholesterol and COPD. R. 372.

Songer treated with George Wagner, M.D., of New Horizons Healthcare from June 23, 2009 through November 4, 2011. R. 377–91, 403–412, 427–33. Songer complained of blood pressure issues during his June 23, 2009 visit. R. 382. His physical examination was normal aside from mild shortness of breath that was worse with exertion. R. 382–83. Dr. Wagner assessed coronary disease and COPD and adjusted Songer's medications. Dr. Wagner also noted that Songer was "NOT interested in smoking cessation at present." R. 383.

Songer followed up with Dr. Wagner on September 24, 2009, and reported that he continued to smoke one pack per day. R. 380. His physical examination was again normal, aside from shortness of breath with exertion. Id. Dr. Wagner discussed the urgency to stop smoking, but again noted that Songer "does not want to quit at present." Id.

4

On July 20, 2010, state agency medical consultant Bert Spetzler, reviewed the medical evidence and determined that Songer could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8 hour period; and sit for 6 hours in an 8 hour period. R. 135–39. Dr. Spetzler also determined that Songer should avoid concentrated exposure to extreme heat/cold, fumes and pulmonary irritants. Id. On January 13, 2011, Joseph Duckwall, M.D., reviewed the evidence and agreed with Dr. Spetzler's assessment. R. 152–62.

On September 7, 2010, Songer returned to see Dr. Wagner complaining of new episodes of brief chest pain that last for a minute or so. R. 405. Dr. Wagner noted that Songer's COPD was uncontrolled and worsening, and Songer was not using his inhaler and continued to smoke. Songer continued to suffer from shortness of breath with exertion. R. 405–07.

In November 2010, Dr. Wagner again noted that Songer was not interested in smoking cessation. R. 404. Despite his complaints of chest pain and shortness of breath, Songer reported that he can walk a block on a flat surface and lift 30 to 40 pounds. R. 403.

Songer returned to see Dr. Wagner in April and November of 2011. R. 428–31. He continued to have uncontrolled, worsening COPD and continued to smoke one pack per day. R. 430. On November 4, 2011, Songer reported difficulty affording his medication. R. 428.

On March 16, 2011, Songer underwent a sleep study at Carilion Sleep Center. R. 419–24. Songer was assessed with COPD, restless leg syndrome, hypertension and obstructive sleep apnea. He was advised to avoid caffeine, lose weight, stop smoking and continue taking his medications. R. 421.

Dr. Wagner completed two medical source statements outlining his opinions as to Songer's ability to engage in competitive work activities. On November 24, 2010, Dr. Wagner completed a Physical Ability to Do Work-Related Activities form and noted that Songer could

5

lift and carry 20 pounds and frequently perform postural functions. R. 415–16. Dr. Wagner

indicated that Songer had standing and/or walking restrictions and pushing and/or pulling

restrictions, but did not provide the precise limitations. Id. Dr. Wagner indicated that sitting was

not affected by Songer's impairment, and noted no postural, manipulative, visual or

environmental limitations. Id.

Counsel for Songer requested that Dr. Wagner provide additional information with regard

to Songer's limitations noted on the November 24, 2010 Medical Source Statement form. On

April 2, 2012, Dr. Wagner noted additional limitations on the same form. R. 438–39.

Specifically, Dr. Wagner indicated that Songer could stand/walk for 2 hours in an 8 hour

workday. Dr. Wagner also checked a box that restricted Songer to sitting for 2 hours in an 8

hour workday, and restricted his ability to push/pull with his lower extremities. R. 438–41. Dr.

Wagner wrote on the form, "[b]ack limitation by history only. Pt does note significant

impairment in sitting and standing by history." R. 438. Dr. Wagner also wrote that he last

examined Songer on November 4, 2011. R. 438.

The ALJ considered both forms submitted by Dr. Wagner and gave them some weight.

R. 93.[4] However, the ALJ rejected the portion of Dr. Wagner's April 2012 opinion limiting

Songer to sitting 2 hours in an 8 hour workday, finding such a severe restriction unsupported in

the record. The ALJ also noted that Songer's limitations with sitting were alleviated by the

provision of a sit/stand option in the RFC. Id.

Songer argues that the ALJ erred by failing to adopt Dr. Wagner's opinion that he is

limited to sitting for 2 hours each in an 8 hour workday. The ALJ's decision not to adopt Dr.

---

[4] Songer asserts that the ALJ rejected Dr. Wagner's opinion simply because the ALJ was confused by the two separate medical source statement forms with the same date. While the ALJ expressed bafflement at the two forms submitted by Dr. Wagner, both containing the same date and yet with different restrictions, the ALJ gave the opinions some weight and provided additional reasoning for rejecting the limitation that Songer could only sit for 2 hours in an 8 hour day. R. 93.

Wagner's sitting limitation is well supported by the record. Songer's treatment records reflect ongoing impairments related to coronary artery disease, hypertension and COPD. The records do not reflect that Songer's ability to sit is impacted by his heart or lung conditions. Songer's records also do not reflect ongoing complaints or treatment for back pain, or any other limitations related to his lower extremities. The only complaint of back pain noted in the record is on December 11, 2008, when Songer visited the Bradley Free Clinic and noted back pain that worsens with standing and eases up when he lies down. R. 371. Dr. Wagner's treatment notes do not support a limitation on Songer's ability to sit. Dr. Wagner's examinations of Songer were normal aside from decreased airflow and bilateral wheezes. R. 380, 383, 403, 405, 429–30. Further, Dr. Wagner noted on the April 2012 form that any limitations relating to back pain were related to Songer's reported history.[5] R. 438.

The ALJ's decision not to adopt Dr. Wagner's restrictive sitting limitation is also supported by the state agency doctors' findings that Songer could sit for 6 hours in an 8 hour period.[6] R. 135–39, 152–62. Additionally, the ALJ accommodated Songer's alleged difficulty sitting by providing a sit/stand option at 30 minute intervals in the RFC. R. 91. Thus, there is more than adequate evidence to support the ALJ's decision not to adopt Dr. Wagner's finding that Songer is capable of sitting for only 2 hours in an 8 hour day.

### Consideration of Impairments Alone and in Combination

Songer also argues that "the evidence, taken in its entirety, indicates that [Songer's] impairments, taken in combination, render him disabled." Pl. Br. Summ. J. p. 19. When a

---

[5] Notably, in his November 24, 2010 opinion, Dr. Wagner clearly marked a box stating that Songer's ability to sit was not affected by his impairment. R. 416. Songer's counsel asserts that Dr. Wagner simply failed to properly complete the November 24, 2010 form, and the April 2012 form contains his true assessment of Songer's abilities. However, the forms themselves appear to stand alone, and thus, do not compel that conclusion.

[6] While the ALJ adopted the state agency physicians' opinions as to Songer's sitting restriction, the ALJ did not adopt their opinions wholesale, but instead imposed more restrictive limitations the RFC than those suggested by the state agency physicians. R. 93.

claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)). "[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, Civ. Action No. 7:10cv313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

The ALJ identified that Songer had several severe impairments, and explicitly found that Songer did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 90. The ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Songer's alleged physical impairments when developing an RFC. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Songer's impairments as supported by the record, providing restrictions that are both exertional (e.g. "lift and carry 20 pounds occasionally") and nonexertional (e.g. "avoid concentrated exposure to cold, heat"). R. 90. Songer fails to state with any degree of precision how the restrictions in the RFC neglect to address any combined impact of his impairments. Rather, Songer's argument is essentially an invitation to reweigh the evidence of record. Songer does not point to any evidence the ALJ failed to consider, does not identify any legal standard the ALJ misapplied, and does not put forward any legal duty that the

8

ALJ failed to fulfill. Rather, Songer's argument amounts to nothing more than a request that this court re-weigh the evidence and reach a different decision—something this court will not do.

**Credibility**

Songer argues that the ALJ erred by failing to consider his decreased smoking and efforts to quit smoking in the analysis of his credibility. Pl. Br. Summ. J. p. 20. Songer points to notes in the record that reference attempts to decrease or quit smoking. R. 109, 352, 380, 421. However, despite Songer's alleged attempts to quit smoking, he continued to smoke one pack per day in direct contradiction to his physicians' repeated advice to stop. R. 380, 383, 405, 430. Dr. Wagner's treatment notes consistently state that Songer is not interested in smoking cessation. R. 380, 383, 404. The ALJ also noted other instances of Songer's noncompliance with treatment recommendations in his credibility analysis, including the failure to use his inhalers as prescribed (R. 405) and his failure to follow up on the sleep study as recommended. R. 421.

Songer also disputes the ALJ's classification of his medical treatment as "limited," and emphasizes the various cardiac and pulmonary function testing that he underwent. Pl. Br. Summ. J. p. 20. Despite the fact that Songer required testing to monitor his cardiac and pulmonary conditions, the record reflects that Songer's treatment has indeed been fairly limited. Songer saw Dr. Wagner for routine primary care, and visited the free clinic on two occasions. R. 371–72, 374–91, 399–412, 425–33.

Credibility determinations are the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v.

Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).  It is apparent from his

decision that the ALJ reviewed with some detail the medical record regarding Songer's physical

impairments, and measured his credibility against the objective medical evidence. R. 91–94. The

ALJ's credibility determination is supported by substantial evidence, as set forth more fully

above, and the court will not disturb it.[7]  See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th

Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

**Additional Evidence**

Songer also asks, in the alternative, that the court remand his claim on the basis of new

evidence submitted to the Appeals Council.  Pl. Br. Summ. J. p. 21–22.  Songer submitted

records dated August 15, 2012 to January 17, 2013 to the Appeals Council.  R. 8–36, 41–83.

These records reflect that Songer continued to complain of chest pain and shortness of breath

after the ALJ's decision. R. 54, 61, 65.  Songer received a second stent in September 2012.

R. 43–47.  Thereafter, Songer continued to complain of chest heaviness with exertion, shortness

of breath and pain in his legs when walking. R. 20, 39.  Songer was prescribed medications for

back pain in addition to his regular medications for COPD, hypertension, hyperlipidemia, and

coronary artery disease, and was advised to quit smoking.  R. 21.  On October 26, 2012, Songer

---

[7] The court notes that the ALJ uses the following boilerplate language in his analysis:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected to cause the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with the above residual functional
> capacity.

R. 91. Recently, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that this boilerplate "gets
things backwards" and conflicts with the agency's own regulations, which require the ALJ to determine the extent to
which a claimant's alleged functional limitations are consistent with the medical findings and other evidence. Id. at
639. The Fourth Circuit found, however, that any error associated with use of this boilerplate is harmless if the ALJ
"properly analyzed credibility elsewhere." Id.  In this case, the ALJ properly analyzed Songer's credibility in spite
of this boilerplate language. See Shelton v. Colvin, No. 7:13CV00470, 2015 WL 1276903, at *6 (W.D. Va. Mar. 20,
2015).

underwent a cardiac catheterization which successfully reduced his stenosis. R. 31–32.  In

January 2013, Songer continued to complain of chest pain and fatigue. R. 11.  Songer also

reported decreasing his smoking to a half pack per day. R. 11.  Songer was advised to continue

dieting and taking his medications, and stop smoking. R. 12.

The Appeals Council considered these additional records and found that they did not

provide a reason to review the ALJ's decision. R. 1. When deciding whether to grant review, the

Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b)

material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v.

Sec'y., Dep't. of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new

if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that

the new evidence would have changed the outcome. Id. When the Appeals Council denied

Songer's request for review, the ALJ's decision became the final decision of the Commissioner.

20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new

evidence, in order to determine whether substantial evidence supports the [Commissioner's]

findings. Wilkins, 953 F.2d at 96.  "However, the Fourth Circuit has also admonished that it is

the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v.

Barnhart, 392 F.Supp.2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638

(4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under

Wilkins to review the entire record including the new evidence to determine if there is a

reasonable possibility that it would change the outcome, with its obligation under Smith to

abstain from making credibility determinations and resolving factual conflicts. Davis, 392

F.Supp.2d at 751.

Here, the additional medical records provide no basis to remand this case because they are not material and do not relate to the time period at issue. Songer asserts that the additional records document that his coronary condition was worse than appreciated by the ALJ at the time of the administrative hearing. Pl. Br. Summ. J. p. 22. I disagree. The ALJ was informed of Songer's coronary condition at the time of his decision, determined that it was a severe impairment and provided a restricted RFC to accommodate the limitations it imposed. The new records reflect deterioration of Songer's coronary condition after the ALJ's decision. There is no indication in the new records that they relate to Songer's physical condition several months earlier.

Additionally, no new limitations or restrictions were placed on Songer's functional capacity after the second stent placement and cardiac catheterization in 2012. The new records reflect that the procedure inserting Songer's second stent went well, and Songer's subsequent cardiac catheterization was successful. R. 31–32, 47. Songer's continued complaints of chest pain and difficulty breathing reflect a progression of Songer's coronary condition and treatment, however they do not reflect new additional limitations arising from that progression. The new evidence demonstrates that Songer's condition worsened shortly after the ALJ's decision. In situations where a claimant's health worsens after the ALJ's decision, either due to a progressive condition or a stable condition with a sudden decline, the proper recourse is to file a new application. Consequently, I find no reasonable probability that the new evidence would have changed the ALJ's decision in this case.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

12

defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: July 7, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge